FILED - WESTERN DIVISION
CLERK, U.S. DISTRICT COURT
NOV - 8 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT
NOV 13 2006
CENTRAL DISTRICT OF CALIFORNIA
BY                               DEPUTY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER HARRINGTON, JESSICA SEYMOUR, TRAVIS SALLADAY, EVELYN O'KEEFFE, CHARLES SLAVIN, and JOHNNY CLOY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CHOICEPOINT INC., a corporation, CHOICEPOINT SERVICES INC., a corporation, CHOICEPOINT PUBLIC RECORDS INC., a corporation, and CHOICEPOINT WORKPLACE SOLUTIONS INC., a corporation,<br><br>Defendants. | CASE No. CV 05-01294 MRP (JWJx)<br>**Master Case File**<br>Consolidated with CASE Nos.<br>CV 05-01683 MRP (JWJx)<br>CV 05-01993 MRP (JWJx)<br>CV 05-02016 MRP (JWJx)<br>CV 06-01870 MRP (JWJx)<br><br>**STATEMENT OF FINDINGS OF FACT AND CONCLUSIONS OF LAW RE: DEFENDANTS' RENEWED MOTION TO DISMISS THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

## INTRODUCTION

On October 11, 2006, this Court issued an Order granting, in part, Defendants' ChoicePoint Inc., ChoicePoint Services Inc., ChoicePoint Public Records Inc. and ChoicePoint Workplace Solutions Inc. (collectively, "ChoicePoint" or "Defendants") Motion to Dismiss the First Amended Consolidated Class Action Complaint for Lack of Subject-Matter Jurisdiction and Failure to State a Claim on Which Relief Can Be Granted, or in the Alternative, Motion for Summary Judgment ("Motion"). *See* Docket No. 133. The following is a Statement of Findings of Fact and Conclusions of Law pursuant to that Order.

# FINDINGS OF FACT[1]

## I. AutoTrackXP®

1. AutoTrackXP® is a web-based application that customers, who are approved by ChoicePoint, access via a web browser from the customer's computer. (Third Meiser Decl. ¶ 3.) ChoicePoint maintains Internet-based data search products, including AutoTrackXP® Faces of the Nation ("FOTN") and AutoTrackXP® Drivers of the Nation ("DOTN") services. (*Id.*) In order to obtain approval to access AutoTrackXP®, customers, among other things, must complete a subscriber agreement. (Still Harrington Decl. ¶ 8.)[2]

2. Upon accessing the AutoTrackXP® web site, the customer must click "Login", enter his or her user name and password and then click "OK." (Third Meiser Decl. ¶ 3.) The customer then is presented with a Gramm-Leach-Bliley Act ("GLB") permissible purpose screen, and the customer must identify a purpose and click "CONTINUE." (*Id.* at ¶ 3.)

3. After the customer completes these steps, the AutoTrackXP® main menu screen is displayed. (*Id.* at ¶ 4.) From the menu, the customer can select different search categories within AutoTrackXP®. (*Id.*) The search categories include FOTN and "Drivers Licenses," which refers to DOTN. (*Id.*) If the customer selects either FOTN or DOTN, the customer is prompted to select from a variety of different search types, including city/state/last name, street

---

[1] These Findings of Fact reference several versions of declarations made by ChoicePoint employees in this case, *Harrington v. ChoicePoint*, CV05-01294 MRP (JWJx), and the related consolidated case, *Wilson v. ChoicePoint*, CV06-01870 MRP (JWJx). The references are as follows:

1) Martin Smith ("Smith"), Business Information Officer and Chief Architect for ChoicePoint Public Records, Inc., a subsidiary of ChoicePoint. ChoicePoint lodged a Third Declaration from Smith ("Third Smith Declaration") in this case on October 13, 2005. *See Harrington* Docket No. 59. ChoicePoint lodged a Fourth Declaration from Smith ("Fourth Smith Declaration") in this case on November 29, 2005. *See Harrington* Docket No. 72. ChoicePoint lodged another Smith Declaration ("Smith Wilson Declaration") in the *Wilson* case on August 10, 2006. *See Wilson* Docket No. 33.

2) Kenneth Meiser ("Meiser"), Vice President of Product Management for ChoicePoint. ChoicePoint lodged a Declaration from Meiser ("Meiser Wilson Declaration") in the *Wilson* case on August 10, 2006. *See Wilson* Docket No. 31. ChoicePoint lodged a Third Meiser Declaration ("Third Meiser Declaration") in both the *Wilson* case and this case on September 28, 2006. *See Harrington* Docket No. 127.

3) William Still ("Still"), Director of Privacy Compliance and Government Affairs for ChoicePoint. ChoicePoint lodged a Declaration from Still ("Still Harrington Declaration") in this case on April 28, 2005. *See Harrington* Docket No. 15.

[2] Unless otherwise noted, the descriptions of FOTN and DOTN are applicable to the versions of those products that were in use at the time of the relevant searches. (Third Meiser Decl. ¶ 2 n.1.)

2

address/zip code, Social Security number, zip code/last name, among several other choices. (*Id.*) Upon selecting a search type, the customer is prompted to enter a search query. (*Id.*) The customer then is presented with a Driver's Privacy Protection Act ("DPPA") permissible purpose screen and must select either a permissible purpose or "No Permissible Use" before clicking on the "search" icon.[3] (*Id.*) The initial page of search results is then transmitted to the customer's computer. (*Id.*)

  4. If the list of search results is sufficiently long, the results will appear on multiple screens or pages, which the user must access separately. (*Id.*) Prior to October 31, 2004, when the searches at issue were conducted, each page would have contained 10 results under FOTN and 15 results under DOTN. (*Id.* at ¶¶ 3-6.) The web server logs for DOTN record when the user selects any page of results beyond the initial page of results. (Third Smith Decl. ¶ 11.) The web server logs for FOTN record when the user selects any page of results beyond the initial page of results. (*Id.* at ¶ 12.) If the user selects an additional page of results, the web server logs do not record the precise page accessed by the user. (*Id.*)

  5. In response to a FOTN search, the results returned may include some or all of the following information, depending on whether information is in ChoicePoint's database for a given individual: name, address, telephone number, Social Security number, age, birthdate, and the date the information was reported to ChoicePoint. (Third Meiser Decl. ¶ 5.)

  6. From an initial screen of search results, a user may click on any name appearing in the search results, which in turn will open a new screen (referred to as a "detailed report"), containing some or all of the following additional information about the individual in question: (1) up to ten addresses associated with the name selected; (2) aliases, if any, for the name displayed in the search results; (3) location and date of issuance for the Social Security number displayed in the search result, if any is displayed; and (4) whether a death indicator is associated with the Social Security number, if one is displayed. (*Id.* at ¶ 8.)

---

[3] If no permitted use is selected, AutoTrackXP® will not release any DPPA-protected data in response to a search query. (Third Meiser Decl. ¶ 4 n.2.)

3

7. From this screen, a user may also order, for an additional fee, and upon again selecting either a DPPA permissible purpose or "No Permissible Use," additional and more detailed reports on the individual in question, including a Basic Report, a Basic Report Plus Associates Feature Report, a National Comprehensive Report, or a National Comprehensive Report Plus Associates Report. (*Id.* at ¶ 9.) Depending on which report is ordered, these reports may return additional information related to the individual in question. (*Id.*) If a customer orders any of these reports, it is a billable event that is captured in the transaction logs as well as in the web logs. (*Id.* at ¶ 9 n.5.)

8. In response to a DOTN search, the results initially returned may include some or all of the following information: name, address, driver's license number, Social Security number, and date of birth. (*Id.* at ¶ 6.) As with a FOTN search, a customer may order a detailed report on any individual included in the search results by clicking on a person's name. (*Id.* at ¶ 10.) A detailed report ordered under DOTN will include some or all of the following information: (1) location and date of issuance for the Social Security number displayed in the search result, if any is displayed; (2) whether a death indicator is associated with the Social Security number, if one is displayed; (3) the person's age, calculated based upon date of birth displayed, if any, and the date of the search; (4) driver's license information, including license class, height, weight, hair color, eye color, gender, issue date, state of issuance, and date of expiration. (*Id.*)

9. From this detailed report screen, a user may also order one or more comprehensive reports also available under FOTN, in a similar manner. (*Id.* at ¶ 11.) If a customer orders any of these reports, it is a billable event that is captured in the transaction logs as well as in the web logs. (*Id.* at ¶ 9 n.5.)

**II.   Plaintiffs Slavin, Salladay, Cloy, O'Keeffe, and Harrington**

10. ChoicePoint is aware of a single search conducted by a fraudster that could have returned information about Plaintiff Charles Slavin. (Third Smith Decl. ¶ 21.) On January 19, 2004, fraudster Gin Yee Financial conducted a DOTN search. (*Id.*) When ChoicePoint recreated the search, information concerning Plaintiff Slavin, among many other persons, was returned.

4

1  Plaintiff Slavin's information appeared on the ninth page of recreated results. (*Id.* at ¶ 22.) Smith
2  reviewed the web server logs associated with the search. (*Id.* at ¶ 23.) After reviewing the logs,
3  Smith concluded that fraudster Gin Yee Financial received only the initial page of results. (*Id.*)
4  Thus, there is insufficient evidence from which to infer that information about Plaintiff Slavin
5  was ever disclosed to the fraudster.

6      11.    ChoicePoint is aware of a single search conducted by a fraudster that could have
7  returned information concerning Plaintiff Travis Salladay. (*Id.* at ¶ 18.) On April 7, 2004,
8  fraudster Gin Yee Financial executed a DOTN search. (*Id.*) When ChoicePoint recreated the
9  search, information concerning Plaintiff Salladay, among many other persons, was returned. (*Id.*
10 at ¶ 19.) Plaintiff Salladay's information appeared on the third page of recreated results. (*Id.*)
11 Smith reviewed the web server logs associated with the search. (*Id.* at ¶ 20.) After reviewing the
12 logs, Smith concluded that fraudster Gin Yee Financial received only the initial page of results.
13 (*Id.*) Thus, there is insufficient evidence from which to infer that information about Plaintiff
14 Salladay was ever disclosed to the fraudster. (*Id.*)

15     12.    ChoicePoint is aware of a single search conducted by a fraudster that could have
16 returned information concerning Plaintiff Johnny Cloy. (*Id.* at ¶ 24.) On January 19, 2004,
17 fraudster Gin Yee Financial executed a DOTN search. (*Id.*) When ChoicePoint recreated the
18 search, information concerning Plaintiff Cloy, among many other persons, was returned. (*Id.* at ¶
19 25.) Plaintiff Cloy's information appeared on the eleventh page of recreated results prior to the
20 initial screen of results. (*Id.*) Smith reviewed the web server logs associated with the search.
21 (*Id.* at ¶ 26.) After reviewing the logs, Smith concluded that fraudster Gin Yee Financial
22 received only the initial page of results. (*Id.*) Thus, there is insufficient evidence from which to
23 infer that information about Plaintiff Cloy was ever disclosed to the fraudster. (*Id.*)

24     13.    ChoicePoint is aware of a single search conducted by a fraudster that could have
25 returned information concerning Plaintiff Evelyn O'Keeffe. (*Id.* at ¶ 27.) On June 9, 2004,
26 fraudster Edmas executed a FOTN search. (*Id.*) When ChoicePoint recreated the search,
27 information concerning Plaintiff O'Keeffe, among many other persons, was returned. (*Id.* at ¶
28 28.) Plaintiff O'Keeffe's information appeared on the twenty-third and the twenty-seventh pages

1  of recreated results. (*Id.*) Smith reviewed the web server logs associated with the search. (*Id.* at
2  ¶ 29.) After reviewing the logs, Smith concluded that fraudster Edmas moved to various pages
3  of results beyond the initial page of results. (*Id.*) However, insufficient evidence exists that
4  fraudster Edmas selected the pages of results upon which information about Plaintiff O'Keeffe
5  likely appeared. (*Id.*) Fraudster Edmas did not select a detailed report about Plaintiff O'Keeffe.
6  (*Id.*) Thus, there is insufficient evidence from which to infer that any information about Plaintiff
7  O'Keeffe was ever disclosed to the fraudster.

8        14.    ChoicePoint is aware of two sets of searches conducted by a fraudster that could
9  have returned information concerning Plaintiff Jennifer Harrington (a/k/a Huneke). (*Id.* at ¶ 15;
10 Fourth Smith Decl. ¶ 3.) First, on August 24, 2004, fraudster Gorge Solis Collections executed a
11 pair of identical FOTN searches. (Third Smith Decl. ¶ 15.) When ChoicePoint recreated the
12 searches, information concerning Plaintiff Harrington, among many other persons, was returned.
13 (*Id.*) Plaintiff Harrington's information appeared on the twenty-fifth page of recreated results.
14 (*Id.* at ¶ 16.) Smith reviewed the web server logs associated with the relevant searches. (Id. at ¶
15 17.) After reviewing the logs, Smith concluded that fraudster Gorge Solis Collections moved to
16 additional pages of results beyond the initial page of results. (*Id.*) However, insufficient
17 evidence exists that fraudster Gorge Solis Collections selected the page of results upon which
18 information about Plaintiff Harrington appeared. (*Id.*) Fraudster Gorge Solis Collections did not
19 select a detailed report about Plaintiff Harrington. (*Id.*) Thus, there is insufficient evidence from
20 which to infer that any information about Plaintiff Harrington was ever disclosed to the fraudster.
21 (*Id.*)

22       15.    Second, On April 13, 2004, fraudster Downey Collections ran a pair of virtually
23 identical FOTN searches. (Fourth Smith Decl. ¶ 3.) When ChoicePoint recreated the searches,
24 information concerning Plaintiff Harrington, among many other persons, was returned. (*Id.* at ¶
25 4.) Plaintiff Harrington's information appeared on the twenty-third page of recreated results.
26 (*Id.*) Smith reviewed the web server logs associated with the relevant searches. (*Id.* at ¶ 6.)
27 After reviewing the logs, Smith concluded that fraudster Downey Collections received additional
28 pages of results beyond the initial page of results. (*Id.*) However, insufficient evidence exists

6

1  that fraudster Downey Collections selected the twenty-third page of results, upon which
2  information about Plaintiff Harrington appeared. (*Id.*) No evidence exists that fraudster Downey
3  Collections ordered any detailed reports about Plaintiff Harrington. (*Id.*) Thus, there is
4  insufficient evidence from which to infer that any information about Plaintiff Harrington was
5  ever disclosed to the fraudster. (*Id.*)

## CONCLUSIONS OF LAW

### I.   The Fair Credit Reporting Act

16.  In order to prove a violation of Sections 1681b and 1681e of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, a plaintiff must demonstrate: (1) the existence of a consumer report; and that (2) that the consumer report was "furnished" to a third party. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004); *Washington v. CSC Credit Servs. Inc.*, 199 F.3d 263, 267 (5th Cir. 2000).

17.  In order for information to qualify as a "consumer report," the information must actually be communicated to a third party. *See, e.g.*, *Wantz*, 386 F.3d at 834. Plaintiffs Slavin, Salladay, Cloy, Harrington, and O'Keeffe have come forward with no evidence that their information was communicated to a third party, aside from the notice letters received from ChoicePoint on or about February 2005 indicating that their information "may" have been disclosed. The undisputed evidence shows that no information about Plaintiffs Slavin, Salladay, or Cloy was transmitted to the fraudsters. Insufficient evidence exists to show that any information about Plaintiffs Harrington and O'Keeffe was transmitted to the fraudsters. Accordingly, these Plaintiffs cannot establish the existence of a communication of a "consumer report," and therefore cannot prove a violation of the FCRA.

18.  In order for information to qualify as a "consumer report," the information must "bear[] on" one of the seven enumerated statutory factors concerning a consumer's: (1) credit worthiness; (2) credit standing; (3) credit capacity; (4) character; (5) general reputation; (6) personal characteristics; or (7) mode of living. 15 U.S.C. § 1681a(d)(1). The information contained in the initial search results under both FOTN and DOTN, as well as that contained in a "detailed report" under FOTN or DOTN, does not bear on any of the seven enumerated statutory

factors. *See, e.g., In re Trans Union Corp.*, Dkt. No. D-9255, § III.D (Fed. Trade Comm'n Sept. 10, 1993); *Individual Reference Servs. Group v. FTC*, 145 F. Supp. 2d 6, 17 (D.D.C. 2001), *aff'd*, 295 F.3d 42 (D.C. Cir. 2002); *Dotzler v. Perot*, 914 F. Supp. 328, 330 (E.D. Mo. 1996). Accordingly, Plaintiffs Slavin, Salladay, Cloy, O'Keeffe, and Harrington cannot establish the existence of a "consumer report," and therefore cannot prove a violation of the FCRA.

## II. California Civil Code § 1798.53 (Invasion of Privacy)

19. Under the California's Civil Code § 1798.53 ("Invasion of Privacy" or "IPA"), a plaintiff must demonstrate the disclosure of information maintained by a state agency or from records within a system of records maintained by a federal government agency. Cal. Civ. Code § 1798.53. Plaintiff Jessica Seymour has failed to come forward with any evidence that any such information was disclosed, and therefore cannot prove a violation of the IPA.

20. Accordingly, ChoicePoint is entitled to summary judgment on the FCRA claims of Plaintiffs Slavin, Salladay, Cloy, Harrington, and O'Keeffe and is entitled to dismissal without leave to amend as to Plaintiff Seymour's IPA claim.

IT IS SO ORDERED.

DATED: November 7, 2006

Honorable Mariana R. Pfaelzer
United States District Judge